**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

KIMBERLY BACARDI, on behalf of                    Case No.: _____
herself and all others similarly situated,

      Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.
d/b/a SPS,

      Defendant.

_____

## CLASS ACTION COMPLAINT

Plaintiff, KIMBERLY BACARDI, on behalf of herself and all others similarly situated, alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et. seq.* ("FCCPA"), against Defendant SELECT PORTFOLIO SERVICING, INC. d/b/a SPS ("SPS").

1.      SPS is a mortgage loan servicer. SPS charged Plaintiff "an estimate of future attorney fees and costs" to reinstate her mortgage loan to avoid foreclosure. "Estimated" fees are fees companies expect to incur in the event that certain conditions take place, but that have *not* actually been incurred. The Eleventh Circuit has denounced the practice of charging "estimated" fees to borrowers to reinstate their loans to be a violation of the FCCPA and FDCPA.

2.      Hundreds of thousands of homes are in some stage of foreclosure in the United States every month. *See* http://www.corelogic.com/research/foreclosure-report/national-foreclosure-report-january-2016.pdf. Most homeowners facing foreclosure are desperate to keep their homes and are willing to do almost anything to continue living in their homes with their

families. SPS exploits their desperation by threatening foreclosure if homeowners do not pay fees SPS demands—including fabricated debt characterized as "estimated" fees and costs in the amounts SPS requires for reinstatement.

3. SPS services loans throughout the United States, including Florida. If a homeowner defaults on payments, SPS imposes certain conditions on the homeowner to avoid foreclosure, including payment of SPS's attendant fees. Despite its contractual obligations under its uniform Mortgage Agreements and Notes to only charge actual fees allowed under applicable law, SPS leverages its position of power over homeowners facing foreclosure and demands payment of estimated fees and costs not actually owed; that is, fees and costs SPS projects to incur but has not actually incurred.

4. SPS includes these estimated fees and costs in the total amounts it demands from homeowners, and insists that the homeowners are required to pay the full amount before SPS will reinstate their loans to avoid foreclosure. The Eleventh Circuit has found that demands for "estimated fees" and costs associated with reinstatement of loans violate the FDCPA and FCCPA.

5. SPS must be held accountable for its actions. SPS knowingly violated the FCCPA, FDCPA, and RESPA by demanding these fictitious and ambiguous estimated fees and costs to desperate homeowners throughout the State of Florida.

## JURISDICTION AND VENUE

6. This Honorable Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA and RESPA, federal statutes.

7.     This Honorable Court has supplemental jurisdiction over the FCCPA claim under 28 U.S.C. § 1367 because the basis of the FDCPA and RESPA federal claims involves the same debt collection practices that form the basis of the state claim.

8.     This Honorable Court has personal jurisdiction because Defendant does business throughout the United States, including the State of Florida. Further, its voluntary contact with the Plaintiff in their course of doing business in Florida made it foreseeable that Defendant would be subject to the jurisdiction of a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

9.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

## PARTIES

10.     Plaintiff Kimberly Bacardi is a natural person who resides in Miami, Florida.

11.     Defendant SPS is a corporation with a principal place of business at 3217 S Decker Lake Drive, Salt Lake City, Utah. Defendant SPS is a national mortgage servicer.

## APPLICABLE LAWS

12.     The Florida Supreme Court liberally construes consumer protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097, 1100 (Fla. 1990).

## I.  FDCPA

13.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

14.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

15.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

16.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

17.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

18.     The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

19.     The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

20.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes." *Id.* § 1692a(5).

## II. RESPA

21.     RESPA imposes certain obligations on mortgage servicers to provide information to borrowers regarding their mortgage loans. 12 U.S.C. § 2605. In 2013, the Bureau of Consumer

Financial Protection enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers including, but not limited to, certain requirements for responding to a written request for information concerning a borrower's mortgage loan. *See* 12 C.F.R. § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

22.     RESPA provides a private cause of action against a mortgage servicer for violations of the provisions of § 2605, if brought within three (3) years of the violation. 12 U.S.C. § 2614.

23.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).

24.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

25.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

26.     RESPA's mortgage servicing regulations require a servicer to provide borrowers with required disclosures that are in writing and "clear and conspicuous." 12 C.F.R. § 1024.32(a)(1).

27.     RESPA also requires a servicer to maintain policies and procedures that are reasonably designed to ensure that the servicer "[p]rovide accurate and timely disclosures to a borrower" as required by applicable law, and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii).

28.     RESPA and its implementing regulations should be liberally construed to effectuate their remedial purpose. *See, e.g., Rawlings v. Dovenmuehle,* 64 F.Supp.2d 1156. 1165 (M.D.Ala.1999); *See also, Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F.Supp.3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.").

### III. FCCPA

29.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

30.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

31.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

32.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

33.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

34.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co., Inc.*, 333 So.2d 65, 67 (Fla. Dist. Ct. App. 1976).

35.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

36.     On or around September 22, 2005, Plaintiff purchased a home in Miami, Florida through a loan from Fidelity Mortgage Trust Corporation ("Fidelity"), secured by a mortgage on the property. Copies of Plaintiff's Mortgage Agreement and Mortgage Note are attached as Exhibit "A" and Exhibit "B," respectively.

37.     In September 2005, Fidelity assigned Plaintiff's mortgage to JPMorgan Chase Bank, N.A. ("JPMorgan"). In September 2012, JPMorgan assigned Plaintiff's mortgage to U.S. Bank, N.A. ("U.S. Bank"), as trustee for Chase Mortgage Finance Trust Series 2005-A2 ("Chase Mortgage"). The assignments are attached as Exhibit "C."

38.     Plaintiff made continuous payments but allegedly defaulted on her loan on or around August 2009.

39.     SPS began servicing Plaintiff's mortgage loan after it was in default, on or about October 29, 2013.

7

40.     The Albertelli Law Firm ("ALAW") was hired to initiate a foreclosure lawsuit against Plaintiff.

41.     Plaintiff retained the law firm of Jacobs Keeley, PLLC to defend her in the foreclosure lawsuit brought by JPMorgan.

42.     On November 19, 2015, Plaintiff, through counsel, mailed SPS a request for information. This letter is attached as Exhibit "D."

43.     In turn, SPS requested information from ALAW concerning the amount of attorney's fees and costs it had incurred to that point and attorney's fees and costs that were not yet incurred but that may be incurred at a later date.

44.     SPS used the information it received from ALAW to calculate the "Total Reinstatement Amount" included in a letter sent to Plaintiff.

45.     On November 30, 2015, SPS responded to Plaintiff's request for information and sent her a reinstatement letter, in which SPS advised Plaintiff that if she wished to avoid foreclosure, she must comply with the requirements for reinstatement of her loan. This letter is attached as Exhibit "E."

46.     The reinstatement letter states that SPS is a mortgage servicer and that the "Total Reinstatement Amount" "must be payable to Select Portfolio Servicing, Inc." and remitted in certain prescribed forms by December 30, 2015.

47.     In the reinstatement letter, SPS also states that "[t]his communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose."

48.     The "Total Reinstatement Amount" to "cure the delinquency" and cease further foreclosure proceedings was $375,423.27, which included "an estimate of future attorney fees

and costs." The estimated amount was based on projected amounts due in the event Plaintiff did not actually pay before a certain future date and certain events relating to foreclosure occurred.

49.     SPS failed to provide a breakdown or itemization of the estimated attorney's fees and costs included in the "Total Reinstatement Amount."

50.     The "Total Reinstatement Amount" included a $4,119.37 charge labeled "Payment to Accrue."

51.     SPS also failed to provide a breakdown of what the $4,119.37 represented.

52.     The reinstatement letter stated that the "Total Reinstatement Amount" "reflects attorney fees and costs which have been incurred through this date and an estimate of future attorney fees and costs for continuing legal work," and "[i]n the event that the actual legal fees and costs charged to SPS are less than the estimates provided in this quote, SPS will apply such overage to any other amounts then due and owing, or if there are no amounts due, will refund such overage directly to you."

53.     Despite the fact that Plaintiff did not actually owe these estimated amounts, since a portion of the attorney's fees and costs charged had not actually been incurred, SPS nonetheless demanded that Plaintiff pay the full amount before SPS would reinstate her loan.

54.     SPS knew the estimated fees and costs were an illegitimate debt, because ALAW had informed SPS that no legal services had yet been performed for those estimated fees and costs.

55.     Also, SPS knew that it was prohibited from attempting to collect estimated fees and costs, because under the terms of a Modified Stipulated Final Judgment and Order dated September 4, 2007 entered in the United States District Court for the District of Massachusetts, in an action instituted by the United States of America as plaintiff ("Order"), SPS was enjoined

from engaging in the same conduct which is the subject of this Complaint.    The Order is attached as Exhibit "F."

56.    SPS knew it could not attempt to collect estimated fees and costs because the Order made clear that SPS and each of its "officers, employees, agents, representatives, and all other persons or entities in active concert or participation with them who receive actual notice of this Modified Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device" are permanently enjoined from:

- Misrepresenting, expressly or by implication, any amount that a consumer owes;

- Misrepresenting, expressly or by implication, that any fee is allowed under the loan instruments, permitted by law, or imposed for services actually rendered;

- Misrepresenting, expressly or by implication, the amount, nature, or terms of any fee or other condition or requirement of any loan; and

- Assessing and/or collecting any fee unless it is for services actually rendered and is a) expressly authorized, and clearly and conspicuously disclosed, by the loan instruments and not prohibited by law; b) expressly permitted by law and not prohibited by the loan instruments; or c) a reasonable fee for a specific service requested by a consumer that is assessed and/or collected only after clear and conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained from the consumer to pay the fee in exchange for the service, and such fee is not otherwise prohibited by law or the loan instruments.

*See* Exhibit F at 8-10.

57.     SPS knew that it could not attempt to collect estimated fees and costs because the Order made clear that SPS and its "officers, employees, agents, representatives, and all other persons or entities in active concert or participation with them who receive actual notice of this Modified Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device" are enjoined from:

- Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including but not limited to: (1) falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2)(A) and (B) of the FDCPA,15 U.S.C. §§ 1692e(2)(A) and (B);

- Using false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer, in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(l0);

- Using any unfair means to collect or attempt to collect a debt, including but not limited to collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not authorized by the agreement creating the debt or permitted by law, in violation of Section 808(1) of the FDCPA, 15 US.C. § 1692f(1); and

- Failing to comply in any other respect with the FDCPA, as amended, or as it may be amended in the future.

*See* Exhibit F at 13-15.

58.     SPS knew that it could not collect estimated fees and costs because the Order made clear that "nothing in this Modified Order shall permit [SPS] . . . to impose any fee or take any other action that is prohibited by any state or federal law or regulation and/or prohibited by the loan instruments and/or other contractual agreement with the consumer." *See* Exhibit F at 13.

59.     SPS's Chief Executive Officer, Matt Hollingsworth, signed the Order.

60.     Although SPS knew that it was prohibited from collecting estimated fees and costs pursuant to the unequivocal terms of the Order, SPS nevertheless attempted to collect illegitimate estimated fees and costs from Plaintiff.

61.     In a remarkably similar case involving demands for "estimated" attorney's fees associated with loan reinstatement to avoid foreclosure, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendant had indeed falsely represented what the plaintiff owed and that no agreement expressly obligated the plaintiff to pay these "estimated" fees. *See Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 647 (11th Cir. 2015) ("[The defendant] violated the FDCPA and FCCPA by charging [the plaintiff] estimated attorney's fees that he had not agreed to pay in the security agreement.").

62.     Additionally, SPS's demands directly breached each of the following contract provisions: (1) Paragraph 9 of the Mortgage Agreement, which permitted SPS recovery of "amounts *disbursed*" in protecting its interest and rights in the Mortgage Agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement, which prohibited SPS from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of the Mortgage Agreement, which permitted SPS to collect "expenses *incurred* in pursuing" certain actions under the Paragraph

which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of the Mortgage Note, which permitted SPS the "right to be paid back . . . for all of its costs and expenses in enforcing" the Note, which included "costs and expenses."

63.     The reinstatement letter sent to Plaintiff is a form letter utilized by SPS, which it routinely sends to thousands of borrowers.

64.     As evidenced by the conduct described in the Order, SPS's standard business practice is to send the form reinstatement letter to borrowers, and to demand illegal estimated fees which it is not entitled to collect.

65.     This type of conduct is not new to SPS, as evidenced by the thousands of complaints received by the Consumer Financial Protection Bureau about SPS's mortgage servicing practices. *See* https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp (4,671 mortgage servicing and debt collection complaints specifically about SPS since December 2011).

66.     In its reinstatement letter, SPS provided unclear, vague, and confusing information to Plaintiff, which caused her to incur further attorney's fees and costs as her foreclosure counsel had to respond to SPS's reinstatement letter.

67.     By charging estimated fees and costs included within the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Defendant frustrated Plaintiff's ability to reinstate her loan; caused her to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the inaccurate and unclear information; and prevented her from receiving accurate information concerning her mortgage.

68.     On or about July 7, 2016, the Plaintiff, through counsel, sent a cure letter to SPS. The letter attached as Exhibit "G."

69.     SPS failed to cure the breach of its violations of state and federal law and, as a result, Plaintiff filed this lawsuit.

## CLASS REPRESENTATION ALLEGATIONS

### Florida Class 1

70.     Plaintiff brings this action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by SPS's FCCPA violations ("Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom SPS charged, collected, or attempted to collect reinstatement of loan amounts not actually incurred during the applicable statute of limitations.

### Florida Class 2

71.     Plaintiff brings this action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by SPS's RESPA violations ("Florida Class 2"), subject to modification after discovery and case development:

> All Florida residents to whom SPS responded to a written request for information that included reinstatement of loan amounts not actually incurred during the applicable statute of limitations.

### Florida Class 3

72.     Plaintiff brings this action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by SPS's FDCPA violations ("Florida Class 3"), subject to modification after discovery and case development:

14

All Florida residents to whom SPS, charged, collected, or attempted to collect reinstatement of loan amounts not actually incurred during the applicable statute of limitations.

73.     Class members are identifiable through Defendant's records and payment databases.

74.     Excluded from the Classes are: (a) Defendant; (b) any entities in which Defendant has a controlling interest; (c) Defendant's agents and employees; (d) any Judge to whom this action is assigned; and (e) any member of such Judge's staff and immediate family.

75.     Plaintiff proposes that she serve as class representative.

76.     Plaintiff and the Classes have all been harmed by the actions of Defendant.

77.     Numerosity is satisfied. There are likely thousands of class members. Individual joinder of these persons is impracticable.

78.     There are questions of law and fact common to Plaintiff and to the Classes, including, but not limited to:

   a.   Whether SPS violated the FCCPA and FDCPA by charging monies not due;

   b.   Whether SPS violated the RESPA by failing to provide accurate, clear and conspicuous information in response to a written request for information;

   c.   Whether Plaintiff and class members are entitled to actual and/or statutory damages as a result of Defendant's actions;

   d.   Whether Plaintiff and the Class are entitled to attorney's fees and costs; and

   e.   Whether Defendant should be enjoined from engaging in such conduct in the future.

79.     Plaintiff's claims are typical of the claims of class members.  Plaintiff and the class members each received reinstatement letters that contained amounts not actually incurred.

80.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions.

81.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

82.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I AS TO SPS'S VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**
**(Florida Class 1)**

83.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

84.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she purchased her home by mortgage.

85.     SPS is a "person" as stated in the FCCPA.

86.     SPS knowingly attempted to collect an illegitimate debt and attempted to enforce, claimed, and asserted a known non-existent legal right to a consumer debt as defined by Fla. Stat. § 559.55(6) when SPS charged "an estimate of future attorney fees and costs" that were needed for reinstatement of the loan to avoid foreclosure. *Id.* § 559.72(9) (prohibiting the collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 647 (11th Cir. 2015) (holding that charging "estimated" attorney's fees not agreed to in the mortgage agreement violated the FCCPA and FDCPA); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by

16

the language of the consumer agreement underlying the debt at issue); Fla. Stat. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.").

87.     SPS knew the estimated amounts were illegitimate because ALAW told SPS that the work for the estimated fees had not yet been performed.

88.     Additionally, SPS knew it could not attempt to collect the estimated fees and costs because the Order that SPS signed prohibited the future collection of estimated fees and costs.

89.     SPS's acts of illegally attempting to collect a debt from Plaintiff and deliberately charging "an estimate of future attorney fees and costs" not incurred constitutes a knowing violation of § 559.72(9) of the FCCPA.

90.     SPS's violation of the FCCPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to dispute amounts which were unclear and inaccurate, and she suffered the imminent risk of having to pay an illegal, inaccurate and inflated amount.

## COUNT II AS TO SPS'S VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
### (Florida Class 2)

91.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

92.     SPS is a "servicer" because it was responsible for "servicing" Plaintiff's mortgage loan.  SPS would receive scheduled periodic payments from Plaintiff pursuant to the terms of her mortgage loan and it would then apply the Plaintiff's payments to her mortgage loan account. 12 U.S.C. § 2605(i)(3).

93.     Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien on residential real property designed principally for the occupancy of one to four families, and was made in whole or in part by Fidelity, then JPMorgan, and then U.S. Bank as trustee for Chase Mortgage, acting as lenders that had deposits or accounts insured by the FDIC. 12 U.S.C. § 2602(1)(A) and (1)(B)(i).

94.     As a servicer of a federally related mortgage loan, SPS must comply with any regulation implementing the provisions of RESPA. See 12 U.S.C. § 2605(k)(1)(E).

95.     SPS is required to maintain policies and procedures that are reasonably designed to ensure that it can "[p]rovide accurate and timely disclosures to a borrower as required by this subpart or other applicable law" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii).

96.     Plaintiff sent a written "request for information" to SPS concerning the amount necessary for Plaintiff to reinstate her loan. 12 CFR § 1024.36.

97.     SPS responded to the Plaintiff's request for information by charging estimated fees and costs without any itemization and by charging an ambiguous $4,119.37 "Payment to Accrue" without any itemization. *See* 12 C.F.R. § 1024.36(d)(1)(i); *see also* 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii).

98.     SPS violated 12 U.S.C. § 2605(k)(1)(E) when it failed to provide a response to Plaintiff's written request for information with accurate, clear and conspicuous information concerning her mortgage loan.

99.     SPS's violation of RESPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan.

100.     Additionally, Plaintiff incurred attorney's fees and costs in having to respond to SPS's reinstatement letter, which contained unclear, inaccurate, and inconspicuous information.

**COUNT III AS TO SPS'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f**
**(Florida Class 3)**

101.     Plaintiff incorporates by reference the prior paragraphs as if set forth fully herein.

102.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when she purchased her home in Florida by mortgage.

103.     SPS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) when it attempted to collect a debt from Plaintiff for reinstatement of Plaintiff's loan. SPS's November 30, 2015 letter to Plaintiff states "This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose." In the letter, SPS further states that it is a mortgage servicer and that the "Total Reinstatement Amount" "must be payable to Select Portfolio Servicing, Inc." and remitted in certain prescribed forms by December 30, 2015. The mortgage servicer exception does not apply because Plaintiff defaulted on her loan in or around August 2009 and the loan was assigned in September 2012.

104.     SPS engaged in "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when it sent the November 30, 2015 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of her loan to avoid foreclosure.

105.     SPS violated 15 U.S.C. § 1692e when it made false, deceptive, and misleading representations about the character and amount that Plaintiff owed to reinstate her loan to avoid foreclosure.

106.     SPS violated 15 U.S.C. § 1692f when it charged estimated fees and costs not owed and not expressly authorized by the agreement creating the debt.

19

107.    SPS's violation of the FDCPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to follow up on SPS's letter, which contained unclear, inaccurate, and inconspicuous information, and she suffered the imminent risk of having to pay an illegal amount.

## JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

108.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

109.    Plaintiff reserves the right to amend her Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, herself and on behalf of the Classes, respectfully requests this Honorable Court to enter judgment against Defendant for all of the following:

a.    That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.    That Plaintiff and all class members be awarded statutory damages;

c.    That Plaintiff and all class members be awarded costs and attorney's fees;

d.    That the Court enter a judgment permanently enjoining Defendant from charging, collecting, enforcing and/or attempting to enforce debt in violation of the FCCPA and FDCPA;

e.    That, should the Court permit Defendant to continue charging, collecting, enforcing and/or attempting to enforce debt, it enter a judgment requiring Defendant to adopt measures to ensure FCCPA, FDCPA and RESPA compliance,

20

and that the Court retain jurisdiction for a period of six months to ensure that Defendant comply with those measures;

f.      That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the FCCPA, FDCPA, and RESPA;

g.      That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

h.      That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and

i.      Such other and further relief as this Honorable Court may deem just and proper.

Dated: August 5, 2016                          Respectfully Submitted,


/s/ *James L. Kauffman*
James L. Kauffman
Florida. Bar No.: 12915
BAILEY & GLASSER LLP
1054 31st Street NW, Suite 230
Washington, DC 20007
Telephone:  (202) 463-2101
Facsimile:  (202) 342-2103
Email: jkauffman@baileyglasser.com

/s/ *Court E. Keeley*
Court E. Keeley, B.C.S.
Florida Bar No.: 23441
JACOBS KEELEY, P.L.L.C.
169 East Flagler Street, Suite 1620
Miami, Florida 33131
Telephone: (305) 358-7991
Facsimile: (305) 358-7992
Email:  Keeley@JakeLegal.com

/s/ *Darren R. Newhart*
Darren R. Newhart
Florida Bar No.: 0115546
J. Dennis Card Jr.
Florida Bar No.: 0487473
CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132
E-mail: darren@cloorg.com
E-mail: DCard@Consumerlaworg.com

*Counsel for Plaintiff and the Putative Class*